FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2012 OCT -3  PM 3: 28

**SEALED** GRETTA G. WHYTE
CLERK

# FELONY

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

### INDICTMENT FOR INVOLUNTARY MANSLAUGHTER, SEAMAN'S MANSLAUGHTER AND CLEAN WATER ACT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. **12-265** |
| v. | * | SECTION: **SECT. E MAG. 5** |
| ROBERT KALUZA and DONALD VIDRINE | * | VIOLATIONS: |
| | * | 18 U.S.C. §§ 1112 and 1115 |
| | * | 33 U.S.C. §§ 1319(c)(1)(A) and 1321(b)(3) |
| | * | |
| * | * | * |

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment:

<u>The Defendants</u>

1.     Defendants ROBERT KALUZA and DONALD VIDRINE were Well Site Leaders

employed in the Gulf of Mexico by a wholly-owned subsidiary of BP plc ("BP"), a multinational

_Fee_ U S A .
✓ Process_____
X Dktd_____
___ CtRmDep_____
___ Doc. No._____

energy corporation headquartered in London, England. On April 20, 2010, defendants KALUZA
and VIDRINE were BP's designated Well Site Leaders onboard the *Deepwater Horizon* drilling rig
in the Gulf of Mexico.

<u>The Dangers of Deepwater Drilling</u>

2.      In the Gulf of Mexico, massive reservoirs of oil and natural gas were trapped deep
below the seabed. BP drilled wells in the Gulf to try to tap these reservoirs, extract the oil and
natural gas, and sell them at a profit.

3.      BP's deepwater drilling was conducted from sophisticated drilling rigs stationed on
the surface of the Gulf's waters thousands of feet above the seabed. Early in the drilling process, the
rig ordinarily lowered a multi-story safety device known as a blowout preventer down through the
water and attached it to the seafloor. The rig was then connected to the seabed by a wide metal pipe
thousands of feet long, known as a riser, attached on one end to the top of the blowout preventer and
on the other end to the rig. Subcontractors for BP based on the rig lowered drilling tools and
pumped fluids, including what is known as drilling "mud," down through the riser and drilled a hole
thousands of feet through the rock beneath the seabed.

4.      These drilling operations were dangerous by their nature. As drilling proceeded
deeper and deeper, natural temperatures and pressures increased, and pockets of pressurized gases
and fluids trapped in porous areas in the rock sometimes were encountered. Successful drilling
could only occur by maintaining a delicate balance. On the one hand, BP had to counteract the
natural pressures deep below the seabed sufficiently -- through use of heavy drilling mud and other
means -- to prevent dangerous amounts of fluids and gases in the rock from flowing into the well.
On the other hand, BP had to avoid drilling the hole so forcefully that it broke apart the rock
formation walls surrounding the hole.

2

5.    Unless this balance was maintained, there were serious risks that fluids and gases could flow from the surrounding rock into the well. If uncontrolled, such an influx, known in the deepwater oil exploration industry as a "kick," could cause a catastrophic blowout up the well and onto the rig, with the potential for ignition, explosions, casualties, death and extensive environmental damage to the Gulf. A kick could also cost days of drilling time as the rig crew sought to counteract it. Such down time directly translated into money lost by BP.

6.    The risks to rig crew safety and to the efficacy of a well remained once the drilling reached the area of a target oil and natural gas reservoir deep below the seabed. These reservoirs were naturally highly pressurized, and various precautions were required to ensure that reservoir oil and gas did not breach the well and cause a blowout.

7.    To address the significant dangers present in drilling wells in the Gulf, the deepwater oil exploration industry developed a fundamental concept and duty known as "well control," which included customs, standards and practices designed to ensure the pressures inside a well were safely managed at all times. Applying these customs, standards and practices, BP issued internal safety requirements, including policies, procedures and guidance on how to maintain well control consistent with the industry standards of care.

8.    One significant precaution BP took to ensure well control was to assign Well Site Leaders onboard each rig. The Well Site Leaders were responsible for, among other things, supervising the implementation of BP's drilling plan and ensuring that well drilling operations were performed safely in light of the intrinsic danger and complexity of deepwater drilling. BP's Well Site Leaders had a duty to maintain well control and received training on well control safety procedures. Personnel onboard the rig often referred to BP's Well Site Leaders as the "company men."

## The Macondo Well

9.     On or about May 2, 2008, BP, through one of its affiliated companies, entered into a lease with the Minerals Management Service ("MMS"), granting BP the rights to oil and natural gas reservoirs at a site called Mississippi Canyon # 252 ("MC # 252") on the Outer Continental Shelf in the Gulf of Mexico. The first well drilled by BP at MC # 252, which BP referred to as the Macondo well, lay approximately 48 miles from the Louisiana shoreline. The seabed in that area was approximately 5,000 feet below sea level, and the series of potential oil and natural gas reservoirs was located more than 13,000 below the seabed.

10.     Pursuant to contracts between BP and affiliated companies of Transocean Ltd. ("Transocean"), Transocean provided, among other things, a drilling rig and rig crew to drill the Macondo well under the supervision of BP.

11.     On or about October 6, 2009, BP began drilling the Macondo well using Transocean's *Marianas* drilling rig and rig crew. On or about November 9, 2009, work was halted on the Macondo well due to Hurricane Ida.

12.     On or about February 10, 2010, BP resumed drilling of the Macondo well using Transocean's *Deepwater Horizon* drilling rig and rig crew.

13.     On or about April 9, 2010, BP reached an oil and natural gas reservoir at a depth of over 18,000 feet below sea level. Thereafter, BP personnel and the rig crew oversaw placement of a metal pipe, called a casing, at the bottom of the well, pouring of cement down and around the casing, and preparations to complete what is known in the industry as temporary abandonment. Temporary abandonment involved various steps to ensure oil and natural gas did not flow up the well either while the drilling rig prepared to depart the site or after the rig left the location.

## Negative Testing

14.     One critical part of the temporary abandonment procedure for the Macondo well was what was known in the industry as negative testing or negative pressure testing. Negative testing assessed whether the cement pumped to the bottom of the well had hardened and formed an effective barrier between the well and the oil and natural gas reservoir.

15.     To conduct a negative test, the pressure exerted by drilling mud and other fluids in the well outward toward the reservoir was reduced below the pressure exerted inward by the reservoir toward the well. This created what was known in the industry as an underbalanced condition. The well was then monitored for any increase in pressure in the well, or flow of oil or gas up the well. During a negative test, any pressure increase or fluid flow was an indication that the well was not secure and that oil and natural gas could be entering the well. If such indications were observed, BP's Well Site Leaders were trained to take appropriate precautions to ensure well control, including shutting in the well, communicating with BP personnel onshore in Houston, Texas to notify them of the situation, and ceasing operations unless and until the indications had been appropriately addressed and remediated.

16.     BP Well Site Leaders had a duty to maintain well control at all times. This duty included ensuring that negative testing was conducted in accordance with the standard of care applicable in the deepwater oil exploration industry.

5

Defendants KALUZA and VIDRINE's

Negligent and Grossly-Negligent Supervision of the Macondo Negative Testing

17.    During the evening of April 20, 2010, the *Deepwater Horizon* remained temporarily attached to and erected on the seabed at the Macondo well, within the meaning of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(a)(1). Defendants KALUZA and VIDRINE, both stationed on the rig, were responsible for, among other things, supervising the negative testing, and had the ultimate authority on the rig to determine whether the negative testing was successful.

18.    During the negative testing that evening, a drill pipe inserted several thousand feet into the well was monitored. Defendants KALUZA and VIDRINE became aware of multiple indications from the drill pipe that the well was not secure. Among other things, pressure on the drill pipe quickly built up significantly above expected values. Each time the pressure was bled off of the valve connected to the drill pipe, the pressure again built unexpectedly. Abnormal fluid flow also occurred.

19.    Despite these significant indications that the well was not secure, defendants KALUZA and VIDRINE failed to phone engineers onshore at that time to alert them to the problems. Instead, defendants KALUZA and VIDRINE accepted an explanation from one or more members of the rig crew attributing the drill pipe pressure to an alleged "bladder effect." This explanation was scientifically illogical and was not recognized within the deepwater oil exploration industry. Defendants KALUZA and VIDRINE nonetheless accepted the explanation, and failed to consult with BP's onshore engineers to discuss whether this alleged "bladder effect" was a realistic explanation for the observed pressures.

20.    Defendants KALUZA and VIDRINE eventually decided to begin monitoring the negative testing on an additional pipe, known as a "kill line." After making this change, defendants KALUZA and VIDRINE were aware of continued, abnormal, high pressure on the drill pipe.

6

Despite these ongoing, glaring indications on the drill pipe that the well was not secure, defendants KALUZA and VIDRINE again failed to phone engineers onshore to alert them to the problem, and failed to investigate any further. Instead, defendants KALUZA and VIDRINE deemed the negative testing a success based on their observations of the kill line. As a result, the rig crew began to remove thousands of feet of heavy drilling mud in the riser and to replace it with lighter-weight seawater, inviting natural gas and oil to migrate up through the riser and onto the rig floor.

21.    Defendants KALUZA and VIDRINE, in violation of their duty of care, negligently and grossly negligently failed to maintain control of the Macondo well. Among other things, the defendants negligently, and grossly negligently: failed to phone engineers onshore to advise them during the negative testing of the multiple indications that the well was not secure; failed to adequately account for the abnormal readings during the testing; accepted a nonsensical explanation for the abnormal readings, again without calling engineers onshore to consult; eventually decided to stop investigating the abnormal readings any further; and deemed the negative testing a success, which caused displacement of the well to proceed and blowout of the well to later occur.

22.    Later that same evening of April 20, 2010, control of the Macondo well was lost. Natural gas, oil and mud blew out of the Macondo well at tremendous pressures. The gas from the blowout ignited onboard the *Deepwater Horizon* and quickly caused explosions that killed eleven men onboard, all of whom were subcontractors assisting in drilling the Macondo well for BP. The eleven men who were killed were:

Jason Christopher Anderson

Aaron Dale Burkeen

Donald Neal Clark

Stephen Ray Curtis

Gordon Lewis Jones

Roy Wyatt Kemp

Karl Dale Kleppinger Jr.

Keith Blair Manuel

Dewey Allen Revette

Shane Michael Roshto

Adam Taylor Weise

23. The negligent and grossly-negligent conduct of defendants KALUZA and VIDRINE proximately caused the deaths of these eleven men.

24. The conduct of defendants KALUZA and VIDRINE also proximately caused the discharge of large and harmful quantities of oil into the Gulf of Mexico. The oil was discharged into the Gulf of Mexico on the seabed, in the water column, at the surface, and across hundreds of miles of beaches and coastline of the Gulf States of Louisiana, Mississippi, Alabama, and Florida.

## COUNT ONE
### (Involuntary Manslaughter)

25.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

26.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

in the special maritime and territorial jurisdiction of the United States, in the commission in an unlawful manner, and without due cause and circumspection, of a lawful act which might produce death, unlawfully killed a human being, to wit: Jason Christopher Anderson, without malice.

All in violation of Title 18, United States Code, Section 1112.

## COUNT TWO
### (Involuntary Manslaughter)

27.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

28.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

in the special maritime and territorial jurisdiction of the United States, in the commission in an unlawful manner, and without due cause and circumspection, of a lawful act which might produce death, unlawfully killed a human being, to wit: Aaron Dale Burkeen, without malice.

All in violation of Title 18, United States Code, Section 1112.

## COUNT THREE
### (Involuntary Manslaughter)

29.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

30.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

in the special maritime and territorial jurisdiction of the United States, in the commission in an unlawful manner, and without due cause and circumspection, of a lawful act which might produce death, unlawfully killed a human being, to wit: Donald Neal Clark, without malice.

All in violation of Title 18, United States Code, Section 1112.

## COUNT FOUR
### (Involuntary Manslaughter)

31.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

32.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

in the special maritime and territorial jurisdiction of the United States, in the commission in an unlawful manner, and without due cause and circumspection, of a lawful act which might produce death, unlawfully killed a human being, to wit: Stephen Ray Curtis, without malice.

All in violation of Title 18, United States Code, Section 1112.

## COUNT FIVE
### (Involuntary Manslaughter)

33.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

34.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

in the special maritime and territorial jurisdiction of the United States, in the commission in an unlawful manner, and without due cause and circumspection, of a lawful act which might produce death, unlawfully killed a human being, to wit: Gordon Lewis Jones, without malice.

All in violation of Title 18, United States Code, Section 1112.

## COUNT SIX
### (Involuntary Manslaughter)

35.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

36.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

in the special maritime and territorial jurisdiction of the United States, in the commission in an unlawful manner, and without due cause and circumspection, of a lawful act which might produce death, unlawfully killed a human being, to wit: Roy Wyatt Kemp, without malice.

All in violation of Title 18, United States Code, Section 1112.

11

## COUNT SEVEN
### (Involuntary Manslaughter)

37.   The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

38.   On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

in the special maritime and territorial jurisdiction of the United States, in the commission in an unlawful manner, and without due cause and circumspection, of a lawful act which might produce death, unlawfully killed a human being, to wit: Karl Dale Kleppinger, Jr., without malice.

All in violation of Title 18, United States Code, Section 1112.

## COUNT EIGHT
### (Involuntary Manslaughter)

39.   The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

40.   On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

in the special maritime and territorial jurisdiction of the United States, in the commission in an unlawful manner, and without due cause and circumspection, of a lawful act which might produce death, unlawfully killed a human being, to wit: Keith Blair Manuel, without malice.

All in violation of Title 18, United States Code, Section 1112.

## COUNT NINE
### (Involuntary Manslaughter)

41.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

42.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

in the special maritime and territorial jurisdiction of the United States, in the commission in an unlawful manner, and without due cause and circumspection, of a lawful act which might produce death, unlawfully killed a human being, to wit: Dewey Allen Revette, without malice.

All in violation of Title 18, United States Code, Section 1112.

## COUNT TEN
### (Involuntary Manslaughter)

43.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

44.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

in the special maritime and territorial jurisdiction of the United States, in the commission in an unlawful manner, and without due cause and circumspection, of a lawful act which might produce death, unlawfully killed a human being, to wit: Shane Michael Roshto, without malice.

All in violation of Title 18, United States Code, Section 1112.

## COUNT ELEVEN
### (Involuntary Manslaughter)

45.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

46.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

in the special maritime and territorial jurisdiction of the United States, in the commission in an unlawful manner, and without due cause and circumspection, of a lawful act which might produce death, unlawfully killed a human being, to wit: Adam Taylor Weise, without malice.

All in violation of Title 18, United States Code, Section 1112.

## COUNT TWELVE
### (Seaman's Manslaughter)

47.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

48.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

being persons employed on a vessel, to wit: the *Deepwater Horizon*, engaged in negligence and inattention to duties on such vessel by which the life of a person, to wit:  Jason Christopher Anderson, was destroyed.

All in violation of Title 18, United States Code, Section 1115.

14

## COUNT THIRTEEN
**(Seaman's Manslaughter)**

49.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

50.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

**ROBERT KALUZA and
DONALD VIDRINE,**

being persons employed on a vessel, to wit: the *Deepwater Horizon*, engaged in negligence and inattention to duties on such vessel by which the life of a person, to wit:  Aaron Dale Burkeen, was destroyed.

All in violation of Title 18, United States Code, Section 1115.

## COUNT FOURTEEN
**(Seaman's Manslaughter)**

51.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

52.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

**ROBERT KALUZA and
DONALD VIDRINE,**

being persons employed on a vessel, to wit: the *Deepwater Horizon*, engaged in negligence and inattention to duties on such vessel by which the life of a person, to wit: Donald Neal Clark, was destroyed.

All in violation of Title 18, United States Code, Section 1115.

## COUNT FIFTEEN
### (Seaman's Manslaughter)

53.    The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

54.    On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

**ROBERT KALUZA and
DONALD VIDRINE,**

being persons employed on a vessel, to wit: the *Deepwater Horizon*, engaged in negligence and inattention to duties on such vessel by which the life of a person, to wit: Stephen Ray Curtis, was destroyed.

All in violation of Title 18, United States Code, Section 1115.

## COUNT SIXTEEN
### (Seaman's Manslaughter)

55.    The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

56.    On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

**ROBERT KALUZA and
DONALD VIDRINE,**

being persons employed on a vessel, to wit: the *Deepwater Horizon*, engaged in negligence and inattention to duties on such vessel by which the life of a person, to wit: Gordon Lewis Jones, was destroyed.

All in violation of Title 18, United States Code, Section 1115.

## COUNT SEVENTEEN
### (Seaman's Manslaughter)

57.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

58.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

being persons employed on a vessel, to wit: the *Deepwater Horizon*, engaged in negligence and inattention to duties on such vessel by which the life of a person, to wit: Roy Wyatt Kemp, was destroyed.

All in violation of Title 18, United States Code, Section 1115.

## COUNT EIGHTEEN
### (Seaman's Manslaughter)

59.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

60.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

being persons employed on a vessel, to wit: the *Deepwater Horizon*, engaged in negligence and inattention to duties on such vessel by which the life of a person, to wit: Karl Dale Kleppinger, Jr., was destroyed.

All in violation of Title 18, United States Code, Section 1115.

17

## COUNT NINETEEN
### (Seaman's Manslaughter)

61.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

62.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

being persons employed on a vessel, to wit: the *Deepwater Horizon*, engaged in negligence and inattention to duties on such vessel by which the life of a person, to wit: Keith Blair Manuel, was destroyed.

All in violation of Title 18, United States Code, Section 1115.

## COUNT TWENTY
### (Seaman's Manslaughter)

63.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

64.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

being persons employed on a vessel, to wit: the *Deepwater Horizon*, engaged in negligence and inattention to duties on such vessel by which the life of a person, to wit: Dewey Allen Revette, was destroyed.

All in violation of Title 18, United States Code, Section 1115.

## COUNT TWENTY-ONE
### (Seaman's Manslaughter)

65.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

66.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

**ROBERT KALUZA and
DONALD VIDRINE,**

being persons employed on a vessel, to wit: the *Deepwater Horizon*, engaged in negligence and inattention to duties on such vessel by which the life of a person, to wit: Shane Michael Roshto, was destroyed.

All in violation of Title 18, United States Code, Section 1115.

## COUNT TWENTY-TWO
### (Seaman's Manslaughter)

67.     The allegations contained in paragraphs one through twenty-four above are realleged and incorporated as if fully set forth herein.

68.     On or about April 20, 2010, in the Eastern District of Louisiana and elsewhere, defendants

**ROBERT KALUZA and
DONALD VIDRINE,**

being persons employed on a vessel, to wit: the *Deepwater Horizon*, engaged in negligence and inattention to duties on such vessel by which the life of a person, to wit: Adam Taylor Weise, was destroyed.

All in violation of Title 18, United States Code, Section 1115.

## COUNT TWENTY-THREE
### (Clean Water Act Violation)

69.     The allegations contained in paragraphs one through and twenty-four above are

realleged and incorporated as if set forth fully herein.

70.     On or about and between April 20, 2010 and July 15, 2010, both dates being

approximate and inclusive, in the Eastern District of Louisiana and elsewhere, defendants

### ROBERT KALUZA and
### DONALD VIDRINE,

did negligently discharge and cause to be discharged oil in connection with activities under the Outer

Continental Shelf Lands Act and which affected natural resources belonging to, appertaining to, and

under the exclusive management authority of the United States, in such quantities as may be and were in fact harmful.

      All in violation of Title 33, United States Code, Sections 1319(c)(1)(A) and 1321(b)(3).


_____ : A TRUE BILL
      FOREPERSON


**UNITED STATES ATTORNEY**
**EASTERN DISTRICT OF LOUISIANA**

**ASSISTANT ATTORNEY GENERAL**
**CRIMINAL DIVISION**


_____
JIM LETTEN [8517]
United States Attorney
JAN MASELLI MANN [9020]
First Assistant United States Attorney
RICHARD R. PICKENS, II [22593]
Assistant United States Attorney

_____
LANNY A. BREUER [Member of DC Bar]
Assistant Attorney General
JOHN D. BURETTA [Member of NY Bar]
Director, Deepwater Horizon Task Force
DEREK A. COHEN [Member of NY Bar]
Deputy Director, Deepwater Horizon Task Force
SCOTT M. CULLEN [Member of MD Bar]
Trial Attorney, Deepwater Horizon Task Force
COLIN BLACK [Member of NY Bar]
Trial Attorney, Deepwater Horizon Task Force
ROHAN VIRGINKAR [Member of DC Bar]
Trial Attorney, Deepwater Horizon Task Force


New Orleans, Louisiana
October 3, 2012

FORM OBD-34

No._____

UNITED STATES DISTRICT COURT

Eastern___ District of___ Louisiana
_____ Criminal___ Division

THE UNITED STATES OF AMERICA

vs.

ROBERT KALUZA
DONALD VIDRINE

# INDICTMENT

### INDICTMENT FOR
### INVOLUNTARY MANSLAUGHTER, SEAMAN'S
### MANSLAUGHTER AND CLEAN WATER ACT

VIOLATIONS: 18 USC § § 1112 & 1115
33 USC § § 1319(c)(1)(A)
&1321 (b)(3)

A true bill.

_____
Foreperson

Filed in open court this _____ _____ day, of
_____ A.D. 2012.

_____
Clerk

Bail, $ _____

RICHARD R. PICKENS, II
Assistant United States Attorney