IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. 12-265 |
| ROBERT KALUZA and DONALD VIDRINE | * | Section    K(5) |
| * * * | | |

**UNITED STATES' SUR-REPLY
REGARDING DEFENDANTS' MOTION TO DISMISS COUNTS 1-22 FOR
FAILURE TO CHARGE AN OFFENSE AND LACK OF JURISDICTION**

**NOW INTO COURT**, through the undersigned Task Force Attorneys, comes the United States of America, which respectfully submits this sur-reply to the Defendants' Joint Reply to Government's Opposition to Motions to Dismiss Counts 1-22 (Rec. Doc. No. 76), to briefly address the applicability of that portion of 18 U.S.C. § 7(1) which extends the special maritime and territorial jurisdiction of the United States to "any vessel belonging in whole or in part to the United States or any citizen thereof, or to any corporation created by or under the laws of the United States, or any State … thereof."

In defendants' Reply Brief, they rely on documents they obtained on July 22, 2013 (after the government filed its opposition) to argue that the *Deepwater Horizon* was not "owned" by any U.S. corporation or any U.S. citizens. For reasons explained below, the government disagrees with defendants' contention that in determining whether the *Deepwater Horizon* was a vessel "belonging to" any U.S. citizen for purposes of 18 U.S.C. § 7(1), strict rules of corporate law addressing ownership of assets control. Moreover, after reviewing defendants' submission on ownership, the government undertook further inquiry into the "ownership" of the *Deepwater Horizon*, and additional facts came to the government's attention which establish that the "owner *pro hac vice*" of the *Deepwater Horizon* is a Delaware corporation. The government respectfully

requests that the Court consider this additional basis establishing that the *Deepwater Horizon* was within the special maritime and territorial jurisdiction of the United States because the rig "belonged in whole or in part" to a domestic corporation which was its owner *pro hac vice*.

    A.    <u>The *Deepwater Horizon* Was A Vessel Belonging in Whole or in Part to Citizens of the United States</u>

Defendants contend that the *Deepwater Horizon* was not a vessel "belonging to" any citizen of the United States because the *Deepwater Horizon* was owned by a Swiss corporation, which itself was owned by another foreign corporation, and, under principles of corporate law, "[a] shareholder of a corporation does not, by virtue of his share ownership, obtain ownership of assets owned by the corporation's subsidiary or – as here – assets owned by its *subsidiary's subsidiary*." (Rec. Doc. No. 76 at 17 (emphasis in original).)

While defendants' observation may be true as a matter of corporate law in isolation, it is beside the point here. There is nothing about the phrase "belonging to" in 18 U.S.C. § 7 that requires the Court to interpret it to mean that rules of corporate law control. See <u>Flink v. Paladini</u>, 279 U.S. 59, 62 (1929) (where corporation owned vessel, stockholders of corporation were "owners" within meaning of statute imposing liability on part owners of vessel in proportion to their share of ownership). In <u>Flink</u>, in an opinion by Justice Holmes, the petitioner "suffered a severe injury on the high seas while employed as an engineer on the tugboat Henrietta, belonging to A. Paladini, Incorporated." <u>Id.</u> at 61-62. Petitioner sued both the corporation and its stockholders under a statute which imposed liability on part owners of a vessel in proportion to their share. <u>Id.</u> at 62. The petitioner argued "that the stockholders of A. Paladini, Inc., were not the owners of the Henrietta." <u>Id.</u> The Supreme Court disagreed, stating:

> [N]o rational distinction can be taken between several persons owning shares in a vessel directly and making the same division by putting the title in a corporation and distributing the corporate stock. The policy of the statutes must extend equally to both. *In*

2

> *common speech the stockholders would be called owners*, recognizing that their pecuniary interest did not differ substantially from those who held shares in the ship. We are of opinion that the words of the acts must be taken in a broad and popular sense in order not to defeat the manifest intent.

Id. at 62-63 (emphasis added). The Court noted that it was not "ignor[ing] the distinction between a corporation and its members, a distinction that cannot be overlooked even in extreme cases," id. at 63, but was "interpret[ing] an untechnical word in the liberal way in which we believe it to have been used – as has been done in other cases." Id. (citing International Stevedoring Co. v. Haverty, 272 U. S. 50, 52 (1926)); cf. United States v. Jon-T Chem., Inc., 768 F.2d 686, 690-96 (5th Cir. 1985) (disregarding corporate structure where parent and subsidiary companies were "alter egos" of one another).

Just as the vessel in Flink "belonged to" the shareholders of the corporation which owned it, so too the *Deepwater Horizon* "belonged to" the U.S. shareholders who own stock in Transocean, Ltd., the parent company of the vessel's nominal corporate owner, Triton.

### B. The *Deepwater Horizon* Was A Vessel Belonging in Whole or in Part to A Domestic Corporation

After reviewing defendants' submission tracing ownership of the *Deepwater Horizon*, the government undertook further inquiry into the vessel's ownership and status, whereupon proposed findings of fact recently filed by Transocean in the MDL litigation came to the government's attention. Those proposed findings of fact demonstrate that Transocean Holdings LLC ("Holdings"), a Delaware corporation, is the owner *pro hac vice* of the *Deepwater Horizon*. As such, the *Deepwater Horizon* qualifies as a vessel "belonging to" a domestic corporation.

On June 21, 2013, in the MDL litigation, Transocean filed Proposed Findings of Fact and Conclusions of Law which included the following:

> 11. The Transocean Defendants include Triton Asset Leasing GmbH (Triton), Transocean Holdings LLC (Holdings),

3

Transocean Offshore Deepwater Drilling Inc. (TODDI), and Transocean Deepwater Inc. (TDI).

12. Triton: Triton was the registered or legal owner of the *Deepwater Horizon* on April 20, 2010. TR. 5922:17-21 (Ambrose); TR. 4518:21-22 (Newman); TREX 52536.57 (8/17/09 Asset Sale of Deepwater Horizon to Triton); TREX 52536.70 (8/17/09 Assignment of Bareboat Charter to Triton Asset Leasing (hereafter, Bareboat Charter)).

13. Holdings: On August 17, 2001, Triton's predecessor (Transocean Offshore International Ventures Limited) transferred possession, command, and control of the *Deepwater Horizon* to Holdings' predecessor (R&B Falcon Drilling Co.) through a bareboat/demise charter. TREX 52536.2, .20, .26, .28, .57. Under the Bareboat Charter between Triton and Holdings, Holdings was granted "the exclusive right to possession and control of the Rig." TREX 52536.6 (Bareboat Charter, art. 4.2). Holdings was also given "the full use of the Rig" and retained the right to "employ the Rig throughout the world for any legal purpose . . . ." TREX 52536.6 (Bareboat Charter, art. 4.1).

14. Under the Bareboat Charter, Holdings assumed the obligation to "man, victual, navigate and operate, supply, fuel, maintain and repair the [*Deepwater Horizon*.]" The possession, use, operation and maintenance of the *Deepwater Horizon* was at the sole risk of Holdings until future re-delivery of the *Deepwater Horizon* to Triton. The Master, officers and crew of the *Deepwater Horizon* were deemed to be engaged and employed exclusively by Holdings and were to remain Holdings' servants, navigating and working the *Deepwater Horizon* solely on behalf of and at the sole risk of Holdings. Holdings further assumed the sole obligation to provide such equipment, outfit, tools, spare and replacement parts as may be required for the use and operation of the *Deepwater Horizon*. TREX 52536.6 (Bareboat Charter, art. 4.2).

15. The Bareboat Charter required Holdings to maintain and preserve the rig in accordance with good commercial maintenance practices and to maintain the rig's classification and certification. TREX 52536.7 (Bareboat Charter, art. 5.1). Holdings was further obligated to "comply with all applicable laws and regulations and with the applicable provisions and conditions of all licenses, permits, consents and approvals of any governmental authority having jurisdiction over the Rig." TREX 52536.6 (Bareboat Charter, art. 4.1).

>	16. Holdings was the contracting party with BP for the drilling of the Macondo well. TR. 4518:18-20 (Newman); Rec. Doc. 5927 (Agreed Stipulations), # 98.

In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Case 2:10-md-02179-CJB-SS), Rec. Doc. No. 10463, at 26-27 of 326.  Although not mentioned in the Proposed Findings, Holdings is a corporation created under the laws of the State of Delaware.

The foregoing facts establish that the *Deepwater Horizon* was transferred to Holdings pursuant to a bareboat charter.  Under settled law, "the bareboat charterer as a demise charterer is the owner *pro hac vice* of the vessel for the duration of the contract."  Forrester v. Ocean Marine Indem. Co., 11 F.3d 1213, 1215 (5th Cir. 1993); see also J. Ray McDermott & Co. v. Hunt Oil Co., 262 F.2d 127, 129 (5th Cir. 1959) ("The petitioner, as charterer of the vessel, was owner *pro hac vice*, its employees were on it, its personal liability for the acts of the vessel, limitation aside, was manifest, and the case was clearly one for admiralty jurisdiction.").[1]

As owner *pro hac vice*, a bareboat or demise charterer "becomes the owner of the vessel chartered for the voyage or service stipulated, and consequently becomes subject to the duties and responsibilities of ownership."  United States v. Leary, 81 U.S. 607, 610 (1871); see Reed v.

---

[1] The test for a demise charter is one of control.  "[I]f the owner retains control over the vessel, merely carrying the goods furnished or designated by the charter, the charter is not a demise; if the control of the vessel itself is surrendered to the charterer, so that the master is his man and the ship's people are his people, then we have to do with a demise."  Martin v. Walk, Haydel & Assocs., Inc., 742 F.2d 246, 248 (5th Cir. 1984) (quoting Gilmore & Black, The Law of Admiralty 240 (2d ed. 1975)); Cordova v. Crowley Marine Servs., Inc., 2003 WL 21790195, at *5 (E.D.La. 2003) ("Factors indicating that an entity is the vessel owner *pro hac vice* are its exercise of control on behalf of the vessel owners and whether it shares in the profits of the ship's operation."); Theriot v. Dawson Prod. Servs., Inc., 1998 WL 637384, at * (E.D.La. 1998) ("'For *pro hac vice* ownership to be found, it is generally necessary for the defendants' relationship to be that of shipowner-bareboat charterer... the charterer takes over the ship, lock, stock and barrel, and mans her with his own people.  He becomes ... the owner *pro hac vice* just as does the lessee of a house and lot, to whom the demise charterer is analogous.'") (quoting Ducote v. International Operating Co. of La. Inc., 678 F.2d 543, 545 (5th Cir. 1982)) (citations omitted).

5

S. S. Yaka, 373 U.S. 410, 412 (1963) ("It has long been recognized in the law of admiralty that for many, if not most, purposes the bareboat charterer is to be treated as the owner, generally called owner *pro hac vice*."); Gibson v. Manetto Co., 194 F.331, 333-34 (5th Cir. 1912) (quoting from Leary).  As such, the owner *pro hac vice* (here, Holdings) bears *in personam* liability for the ship's operation and any injuries suffered onboard, warrants the vessel's seaworthiness, and is subject to *respondeat superior* liability for acts and omissions of the vessel and its crew.  See, e.g., Gilmore & Black, The Law of Admiralty §4-23 (2d ed. 1975); see also Forrester, 11 F.3d at 1215.  The owner *pro hac vice* "stands in the shoes of the vessel owner," which merely retains a right of reversion.  Bosnor S.A. de C.V. v. Tug L.A. Barrios, 796 F.2d 776, 783 (5th Cir. 1986); Gabarick v. Laurin Maritime (America), Inc., 900 F.Supp.2d 669, 672 (E.D. La. 2012).  The Fifth Circuit considers a bareboat charterer, as owner *pro hac vice*, to hold a "proprietary interest" in the vessel.  See Bosnor, 796 F.2d at 783.  In short, the difference between the titled owner of a vessel and an owner *pro hac vice* is but one of degree.  See The Nellie T., 235 F. 117, 118-19 (2d Cir. 1916) ("The difference between the title of an owner of a vessel and that of a charterer, owner *pro hac vice*, is but in degree.").

Because Holdings was the owner *pro hac vice* of the *Deepwater Horizon*, the rig was a vessel "belonging in whole or in part" to a corporation created under the laws of any State (namely Delaware), and subject to federal criminal jurisdiction. 18 U.S.C. § 7(1).  Although this argument was not raised in the government's original opposition, we request leave to be heard on this argument in the interest of justice and in light of the complex factual situation present in this case.

6

**WHEREFORE**, for the reasons set forth above and in the United States' previously filed opposition, the Court should deny the defendants' Motion to Dismiss Counts 1-22 for Failure to Charge an Offense and Lack of Jurisdiction.

New Orleans, Louisiana, this 8th day of August, 2013.

    Respectfully submitted,

    JOHN D. BURETTA
    Director, Deepwater Horizon Task Force

    /s/ Rohan A. Virginkar
    WILLIAM C. PERICAK [Member of NY and MA Bars]
    SCOTT M. CULLEN [Member of MD Bar]
    ROHAN A. VIRGINKAR [Member of DC Bar]
    COLIN L. BLACK [Member of NY and DC Bars]
    Trial Attorneys
    Deepwater Horizon Task Force
    400 Poydras Street, Suite 1000
    New Orleans, LA 70130
    Phone: (504) 593-1800

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

/s/ Rohan A. Virginkar
Trial Attorney
Deepwater Horizon Task Force
