UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CRIMINAL No. 12-265 |
|---|---|---|
| | * | |
| | * | SECTION K |
| v. | * | |
| | * | |
| ROBERT KALUZA | * | JUDGE |
| and | * | STANWOOD R. DUVAL, JR. |
| DONALD VIDRINE | * | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DEFENDANTS' JOINT SUR-REBUTTAL
TO GOVERNMENT'S SUR-REPLY (DOC. 87)
<u>CONCERNING MOTIONS TO DISMISS COUNTS 1-22 (DOCS. 51 AND 53)</u>**

Defendants moved to dismiss counts 1-11 because the *Deepwater Horizon* was not "[w]ithin the special maritime and territorial jurisdiction of the United States" as required by 18 U.S.C. § 1112 and as defined in 18 U.S.C. § 7. Among other things, the vessel was owned solely by a Swiss company, not "in whole or in part" by a United States person, as required for jurisdiction by 18 U.S.C. § 7(1); *United States v. McRary*, 665, F.2d 674, 678 (5th Cir. 1982). Doc. 51 at 16-20.

The government admits the indisputable fact of foreign ownership ("*Deepwater Horizon* was owned by a foreign corporation named Triton Leasing GmbH. . . ." Doc. 71 at n. 4). But it argued in its opposition that the requirement of U.S. ownership is nevertheless satisfied because Transocean, Ltd. – a Swiss company that owned another company that had a Hungarian subsidiary that owned a Swiss subsidiary (Triton) that was the owner of the *Deepwater Horizon* – had some U.S. shareholders. *See* Doc. 71 at 33-35. Defendants' reply showed that this theory of ownership is contrary to the basic corporate

law that the shareholders of a corporation do not own the assets of the company (nor the assets of the subsidiary of a subsidiary of a subsidiary of the corporation). Doc. 79 at 17.

In its sur-reply (Doc. 87), the government for the first time advances two novel arguments that attempt to avoid the applicability of this well-established law. First, it cites a 1929 Supreme Court case construing a different statute that has no application to § 7(1) and that has been expressly limited to its original, narrow scope. Second, the government argues that, because the foreign owner of the *Deepwater Horizon* had bareboat chartered it to a U.S. company, the vessel "belong[ed] . . . to" and was owned by the U.S. company for purposes of § 7(1). These new arguments have no merit.

### 1. *FLINK* DOES NOT OVERRIDE BASIC CORPORATE LAW

For the first time, the government cites *Flink v. Paladini*, 279 U.S. 59 (1929), for its contention that a subsidiary's subsidiary's subsidiary's assets belong to the shareholders of the grandparent company. But *Flink* addressed a narrow and inapplicable point: interpretation of a federal statute that was enacted in 1851 (now codified at 46 U.S.C. § 183), that limits a "shipowner's" civil liability for certain accidents.

Section 183 "was designed to induce the heavy financial commitments the shipping industry requires by mitigating the threat of a multitude of suits and the hazards of vast, unlimited liability as a result of a maritime disaster." *Maryland Casualty Co. v. Cushing*, 347 U.S. 409, 414 (1954). In accord with this purpose, *Flink* found the statutory phrase protecting the "owner of any vessel" to include stockholders of the corporate owner. The Court acknowledged "the distinction between a corporation and its members, a distinction that cannot be overlooked even in extreme cases," but elected "to interpret

an untechnical word in the liberal way in which we believe it to have been used." *Id*. It concluded "the words of [the statute] must be taken in a broad and popular sense in order not to defeat the manifest intent" of 46 U.S.C. § 183. *Flink*, 279 U.S. at 63. Given its narrow holding, with a single exception that has no applicability here, *Flink* has been cited exclusively in cases interpreting § 183.[1] Notably, in a recent case involving the Foreign Sovereign Immunities Act, the Supreme Court declined to expand *Flink* beyond its narrow confines. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 473-76 (2003) (majority opinion of seven Justices rejected two dissenters who argued that *Flink* stood for a broader meaning).

The unique policy grounds that led the *Flink* Court to expansively interpret the phrase "owner of any vessel" have no application here. Nothing in the text or legislative history of § 7(1) or the cases interpreting it suggest that it should receive the "broad" construction that *Flink* gave to 46 U.S.C. § 183. To the contrary, the Supreme Court has made clear that Congress must provide a "clear indication of extraterritoriality" before a statute will be found to apply beyond this country's borders. *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1665 (2013) (quotation omitted). The government's attempt to transplant the *Flink* approach is particularly inapt in this criminal case, where any ambiguity must be construed against the government – where, in other words, "the tie

---

[1] *Flink* has been cited 62 times in 84 years. The only case we have found that invokes *Flink* outside the context of limitation of shipowner liability involves veil-piercing in a dispute that is irrelevant to this case. Specifically, *Brookline v. Gorsuch*, 667 F.2d 215, 221 (1st Cir. 1982) considered whether a corporation owned by Harvard University was a nonprofit educational institution exempt from certain Clean Air Act requirements and the court cited – but did not rely on – *Flink* for background information. *See also Alabama Power Co. v. TVA*, 948 F. Supp. 1010, 1026 (N.D. Ala. 1996) (a case not involving the question of ownership that quotes a passage from *Gorsuch* that includes its cite to *Flink*).

must go to the defendant." *United States v. Santos*, 553 U.S. 507, 514 (2008) (plurality opinion). Fundamental and well-settled principles of corporate ownership apply here, and under those principles a subsidiary's subsidiary's subsidiary's assets are not owned by the shareholders of the grandparent corporation.

## 2. A VESSEL DOES NOT BELONG TO A BAREBOAT CHARTERER.

Still searching for a theory of jurisdiction after indictment, the government next argues that because the Swiss owner of the *Deepwater Horizon* bareboat-chartered it to a U.S. company, the vessel "belong[ed] . . . to" the U.S. company within the meaning of § 7(1). This is wrong. A bareboat charterer because of his contract has certain responsibilities, liabilities, privileges, and rights under maritime tort law . . . but he is not the vessel's owner. Thus, all of the cases cited by the government concern the civil liabilities and risks assumed by charterers – time charterers, bareboat charterers, vessel charterers – for injury to the vessel or the crew, all depending on the terms of the charter.

*Black's Law Dictionary* explains a bareboat charter as follows:

> A [bareboat charter is a] charter in which the shipowner surrenders possession and control of the vessel to the charterer, who then succeeds to many of the shipowner's rights and obligations. The charterer, who provides the personnel, insurance, and other materials necessary to operate the vessel, is known either as a demise charterer or as an owner pro hac vice. . . .
>
> The [bareboat] charterer takes possession and operates the ship during the period of the charter *as though the vessel belonged to the charterer*. The bareboat charter is thus analogous to the driver who leases a car for a specified period or a tenant who rents a house for a term of years. The charterer provides the vessel's master and crew (much as the lessee-driver personally drives the car) and pays the operating expenses (much as the lessee-driver buys the gasoline).

4

Bryan A. Garner, *Black's Law Dictionary* 267 (9th ed. 2011) (quoting David W. Robertson, Steven F. Friedell & Michael F. Sturley, *Admiralty and Maritime Law in the United States* 371-72 (2002) (emphasis added)). In other words, the vessel does not *actually* belong to the bareboat charterer. *Id.* (emphasis added); *see also Guzman v. Pichirilo*, 369 U.S. 698, 700 (1962) (bareboat charter is "tantamount to, *though just short of*, an outright transfer of ownership") (emphasis added). The Fifth Circuit made this clear in *Rogers Terminal and Shipping Corp. v. International Grain Transfer, Inc.*, 672 F.2d 464, 466 (5th Cir. 1982) (distinguishing between vessel owner and its bareboat charterer, and holding that owner could recover damages incurred in collision while vessel was under bareboat charter).

Section 7(1) requires that the vessel "belong[] in whole or in part to the United States or any citizen thereof, or to any [U.S. created] corporation." A vessel does not "belong to" a bareboat charterer any more than a leased truck belongs to its lessee. The fact that a person enjoys some of the attributes and responsibilities of ownership – of a vessel, a truck, or a parcel of land – does not make him an owner. *And not surprisingly, no case has ever applied § 7(1) to a bareboat charter on the high seas*.

### 3. <u>CONCLUSION</u>

The Fifth Circuit has declared that § 7(1) "necessarily restricts its reach to vessels owned in whole or in part by United States citizens." *United States v. McRary*, 665 F.2d 674, 678 (5th Cir. 1982). The government has not shown that any U.S. citizen (or any U.S.-created corporation) owned the *Deepwater Horizon*. Thus, the statute does not extend the reach of 18 U.S.C. § 1112 to conduct occurring on the vessel.

5

Respectfully submitted,

/s/ David Gerger
David Gerger, *pro hac vice*
Shaun Clarke, T.A. (La. Bar. No. 24054)
Dane Ball, *pro hac vice*
David Isaak, *pro hac vice*
GERGER & CLARKE
1001 Fannin, Suite 1950
Houston, Texas 77002
Phone: (713) 224-4400
Fax:     (713) 224-5153
Email: David@GergerClarke.com
Email: Shaun@GergerClarke.com
**Attorneys for Defendant Robert Kaluza**

Of Counsel:
John D. Cline, *pro hac vice*
235 Montgomery, Suite 1070
San Francisco, California
Phone: (415) 322-8319; Fax: (415) 524-8265
Email: cline@johndclinelaw.com

/s/Robert N. Habans, Jr.
Robert N. Habans, Jr., T.A. (La. Bar No. 6395)
Habans & Carriere
10843 N. Oak Hills Parkway
Baton Rouge, Louisiana 70810
(225) 757-0225 – Telephone
(225) 757-0398 – Fax
Email: bobhab@bellsouth.net

and

Jan K. Frankowski (La. Bar No. 23080)
Barkley & Thompson, L.C.
1515 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
(504) 595-3357 – Telephone
(504) 595-3355 – Fax
Email: jfrankowski@barkleythompson.com
**Attorneys for Defendant Donald Vidrine**

6

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.

/s/ David Gerger
David Gerger, *pro hac vice*