UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                          CRIMINAL ACTION

VERSUS                                                                              NO. 12-265

ROBERT KALUZA                                                              SECTION "K"(1)

## ORDER AND REASONS

Before the Court is Defendant's Motion to Dismiss Based on Constructive Amendment or, Alternatively, Material Variance. (Doc. 411). Having reviewed the memoranda, the Superseding Indictment, the relevant law and having entertained oral argument this day, the Court finds no merit in the motion.

Defendant contends that while the Superseding Indictment alleges that both Kaluza and Vidrine accepted the "bladder effect" as the explanation for the source of pressure on the drill pipe, at trial the Government's theory was that Vidrine **did not accept the "bladder effect" explanation**, and that the Government is relying on a new theory that being that "Kaluza negligently caused the accident by not telling Vidrine everything he observed in a prior negative test." Specifically, defendant maintains that the "new theory of the case" is that Kaluza negligently caused the accident by not telling Vidrine that during the drill pipe negative test (1) that the annular preventer leaked, and (2) that the first negative test did not last a full thirty minutes.

Moreover, the defendant contends that the Government's expert, Mr. Lewis, testified that whoever is "on tour" is the "one in charge." The defendant argues that since the displacement occurred on Mr. Vidrine's tour and that Mr. Vidrine did not rely on the "bladder effect," then the

Government is "in essence modifying the element of causation" in the indictment. The Court will first address these contentions in the context of constructive amendment.

**Constructive Amendment**

>As stated by the Fifth Circuit in *United States v. Doucet*, 994 F.2d 169 (5th Cir. 1993):
>
>>The Fifth Amendment provides for criminal prosecution only on the basis of a grand jury indictment. Only the grand jury can amend an indictment to broaden it. *Stirone v. United States*, 361 U.S. 212, 215-16, 80 S. Ct. 270, 272, 4 L.Ed.2d 252 (1960). The amendment need not be explicit to constitute reversible error, but may be implicit or constructive. This occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. *United States v. Baytank*, 934 F.2d 599, 606 (5th Cir. 1991). Constructive amendment requires reversal of the conviction. *Id.* Moreover, it is clear that the indictment may be amended constructively by the actions of either court of the prosecutor. *Salinas*, 654 F.2d at 324.

*Id.* at 172. Thus, the lynchpin of constructive amendment rest on whether "the government changed its theory during the trial so as to urge the jury to convict on a basis broader than that charged in the indictment." *Id.* Also, when the government is allowed to prove an essential element of the crime on an alternative basis permitted by the statute but not charged in the indictment, constructive amendment occurs. *United States v. Girod*, 646 F.3d 304, 316 (5th Cir. 2011).

In the case at bar, the superseding indictment which issued from the grand jury on November 14, 2012, is framed in the conjunctive: Mr. Kaluza and Mr. Vidrine were co-defendants. The relevant factual allegations against them as to the alleged violation of the Clean Water Act concerned the negligent supervision of the Macondo negative testing and are found at ¶¶ 17-21. The indictment in essence states in relevant part that:

¶17  Kaluza and Vidrine were responsible for supervising the negative testing and had the ultimate authority on the rig to determine whether the negative testing was successful.

¶18  Kaluza and Vidrine became aware of multiple indications from the drill pipe that the well was not secure.  "Among other things, pressure on the drill pipe quickly built up significantly above expected values.  Each time the pressure was bled off the valve connected to the drill pipe, the pressure again built unexpectedly.  Abnormal fluid flow also occurred."

¶19  Despite these anomalies, Kaluza and Vidrine failed to phone engineers onshore at that time to alert them to the problems.  Instead, Kaluza and Vidrine accepted an explanation from one or more members of the rig crew attributing the drill pipe pressure to an alleged "bladder effect." This explanation was scientifically illogical and they did not consult with onshore engineers to discuss whether this alleged "bladder effect" was a realistic explanation for the observed pressures.

¶20  Kaluza and Vidrine then monitored the negative testing on the kill line and were aware of continued, abnormal, high pressure on the drill pipe and again did not seek guidance from onshore engineers.  "Instead, defendant Kaluza and Vidrine deemed the negative testing a success based on their observations of the kill line."  With that, displacement began removing the drilling mud with water in the riser which resulted in natural gas and oil to migrate up through the riser and onto the rig floor.

¶21     Kaluza and Vidrine negligently failed to maintain control of the Macondo well. Among other things, the defendants negligently: (1) failed to phone engineers onshore to advise them during the negative testing of the multiple indications that the well was not secure; (2) failed to adequately account for the abnormal readings during the testing; (3) accepted a nonsensical explanation for the abnormal readings, again without calling engineers onshore to consult; (4) eventually decided to stop investigating the abnormal readings any further; and (5) deemed the negative testing a success, which caused displacement of the well to proceed and blowout of the well to later occur.

Based on these allegations, the government alleged in ¶ 23 that Kaluza and Vidrine caused the discharge of oil at issue in this Clean Water Act prosecution.

From this review of the indictment, it is clear to the Court that there has been no constructive amendment. While paragraph 19 may contain the allegations concerning the bladder effect explanation of the anomalies encountered in the drilling pipe negative test, ¶ 20 and ¶ 21 clearly outline the parameters of the Government's contentions.

First, Mr. Vidrine's rational for accepting the negative test on the drill pipe being a success was less than pellucid from his testimony at trial. He mentioned that the Transocean people had told him about the compression or bladder effect; however, later he did say that he did not rely on that explanation. The Court finds that from the testimony at trial, it simply is not clear upon what basis Mr. Vidrine acted.

However, this testimony does not change the fact that the allegations in paragraph 21 of the indictment include that Kaluza "failed to adequately account for the abnormal readings during the testing" and that he did not seek any guidance. In addition, the phrase "among other things" in that paragraph would include allegations that Mr. Kaluza did not fully inform Mr. Vidrine of the circumstances of the negative test of the drill pipe. Mr. Kaluza chose to remain on deck during the negative test of the kill line; he was aware at that time of the anomalous reading of significant pressure on the drill pipe with zero pressure on the kill line. His alleged failures at that point to inform Mr. Vidrine of the anomalies on his "tour" with respect to the negative test on the drill pipe are encompassed in the indictment.

Clearly, the government has neither changed its theory during the trial so as to urge the jury to convict on a basis broader than that charged in the indictment, nor has the government been allowed to prove an essential element of the crime on an alternative basis permitted by the statute but not charged in the indictment. As the court stated in *United States v. Broadnax*, 601 F.3d 336, 343 (5th Cir. 2010), "No constructive amendment occurred here because neither the evidence at trial nor the jury instructions implied that Broadnax could be convicted of anything other than being a felon in possession of a firearm that had been in and affecting interstate commerce in violation of § 922 (g)(1)." Likewise, Mr. Kaluza can only be convicted on the crime charged in the indictment, that being a violation of the Clean Water Act. The motion is without merit in this regard.

**Material Variance**

"A variance occurs 'when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense.'" *Girod*, 646 F.3d at 316 citing *Untied States v. Delgado*, 401 F.3d 290, 295 (5th Cir. 2005).  To determine whether a variance occurred a court must compare the evidence presented at trial with the language of the indictment.  *Id.*  Moreover, it is a ground for dismissal only where the variance has prejudiced the defendant's substantial rights.  *Id.*  For the reasons noted above, the Court finds that the evidence at trial has substantially tracked the language of the indictment.  Moreover, the defendant's substantial rights have not been compromised.  Because the basic theory of the case, that is Mr. Kaluza was negligent in failure to adequately account for the abnormal readings during the testing, has not changed.  Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss Based on Constructive Amendment or, Alternatively, Material Variance (Doc. 411) is **DENIED**.

New Orleans, Louisiana, this 24th day of February, 2016.

STANWOOD R. DUVAL, JR.
**UNITED STATES DISTRICT COURT JUDGE**